**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **DELBERT M. WOODWORTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:25-cv-00458-ALT** |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** ***sued as Frank Bisignano, Commissioner of the Social Security Administration*****,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Plaintiff Delbert M. Woodworth appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB"). (ECF 1). Because at least one of Woodworth's arguments is persuasive, the Commissioner's decision will be reversed and the case remanded to the Commissioner.

## I. FACTUAL AND PROCEDURAL HISTORY

Woodworth applied for DIB in July 2018, alleging disability as of June 2, 2017. (ECF 16 Administrative Record ("AR") 373-76).[1] On February 11, 2019, Woodworth was found disabled and awarded benefits as of January 25, 2019. (AR 211-14). Woodworth subsequently appealed the disability onset date, and February 22, 2022, after an administrative hearing, he was found not disabled for the period of June 2, 2017, through January 24, 2019. (AR 186-95). Woodworth appealed the unfavorable decision to the Appeals Council, and on July 22, 2022, the Appeals

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed in blue at the top right of the page when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

Counsel vacated the decision and remanded the case to an administrative law judge (ALJ) for resolution of several issues. (AR 200-04).

On May 18, 2023, after another administrative hearing, an ALJ found that Woodworth was disabled from June 2, 2017, through April 23, 2019, but not disabled from April 24, 2019, through the date of the decision. (AR 20-43). This time the Appeals Council denied Woodworth's request for review. (AR 8-12).

On October 6, 2023, Woodworth appealed to the district court the denial of benefits for the period of April 24, 2019, through May 18, 2023. (AR 1165-69). On May 3, 2024, the Court reversed the ALJ's decision and remanded the case for further proceedings. (AR 1185-88). On May 2, 2025, after another administrative hearing, an ALJ found Woodworth was disabled from June 2, 2017, through April 23, 2019; and February 20, 2024, through the date of the decision, but not disabled from April 24, 2019, through February 19, 2024. (AR 1058-73). This decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On August 29, 2025, Woodworth filed a complaint in this Court appealing the Commissioner's final decision of non-disability for the period of April 24, 2019, through February 19, 2024. (ECF 1). In this appeal, Woodworth contends the ALJ erred by: (1) substituting his own lay opinion for the three medical opinions of record; (2) interpreting a rule or regulation in a manner that defies plain reason; (3) failing to follow the remand instructions; (4) failing to account for his mental health limitations, including how they would have affected his treatment; (5) relying on an error-ridden hearing transcript that violates due process; and (6) failing to build an accurate and logical bridge to the assigned residual functional capacity (RFC). (ECF 21 at 3-4).

On the date of the Commissioner's final decision, Woodworth was fifty-six years old (AR 373, 1073), had a tenth-grade education (AR 425), and had past work as a material handler, industrial truck operator, and installer (AR 34, 107-08, 425). In his application, Woodworth alleged disability due to congestive heart failure, a stroke, and back and knee issues. (AR 424).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner … , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### *A. The Law*

Under the Act, a claimant seeking DIB must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. § 404.1520. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant' maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks

omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

*B. The Commissioner's Final Decision*

In the Commissioner's final decision, the ALJ found as a threshold matter that Woodworth was insured for DIB through June 30, 2024. (AR 1061). At step one of the five-step sequential analysis, the ALJ found that Woodworth had not engaged in substantial gainful activity since April 24, 2019, the beginning of the period at issue. (*Id.*). At step two, the ALJ found that Woodworth had the following severe impairments since April, 24, 2019: residuals of "left ventricular LV dysfunction in the setting of viral illness" and obesity. (*Id.*). At step three, the ALJ concluded that Woodworth did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 1063).

The ALJ further concluded that since April 24, 2019, Woodworth had an RFC for the full range of light work as defined in 20 C.F.R. § 404.1567(b). (AR 1064). The ALJ determined at step four that Woodworth had no past relevant work. (AR 1071). At step five, the ALJ found that prior to February 20, 2024, a hypothetical individual of Woodworth's age category ("closely approaching advanced age"), education, experience, and assigned RFC could perform a significant number of light-exertional jobs in the national economy. (AR 1071-72). The ALJ further found that beginning on February 20, 2024, there were no jobs that exist in significant numbers in the national economy that a hypothetical individual of Woodworth's age category ("advanced age"), education, experience, and assigned RFC could perform. (AR 1071-72). Accordingly, the ALJ found that Woodworth was not disabled prior to February 20, 2024, but

became disabled on that date and continued to be disabled through the date of ALJ's decision, May 2, 2025. (*Id.*).

*C. Medical Opinions*

In his first argument, Woodworth asserts the ALJ erred when assigning the RFC by substituting his own lay opinion for the prior administrative findings of record—namely, the November 2018 examining opinion of Brenda Vazquez, M.D.; the January 2019 reviewing opinion of J.V. Corcoran, M.D.; and the March 2020 reviewing opinion of J. Sands, M.D. (ECF 21 at 12-13). Woodworth emphasizes that in doing so, the ALJ ignored the Appeals Council remand order that directed the ALJ to "[g]ive further consideration to the prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c." (*Id.* at 11; AR 1191).

1. <u>Applicable Law</u>

"[T]he ALJ evaluates medical opinions and prior administrative medical findings in a comprehensive fashion." *Michelle H. v. Kilolo Kijakazi Comm'r of Soc. Sec.*, No. 21-cv-03238, 2024 WL 6847990, at *5 (C.D. Ill. Dec. 4, 2024) (citations omitted). When evaluating medical opinions and prior administrative findings, the ALJ considers several factors:

> (1) supportability used by the medical source to support the opinion; (2) consistency of the medical opinion with the other evidence in the record; (3) relationship with the claimant, including the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship; (4) specialization of the medical source; and (5) other factors that tend to support or contradict a medical opinion.

*Id.* (citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)). "[T]he most important factors for the ALJ to consider are the supportability and consistency factors." *Id.* (emphasis omitted) (citing 20. C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). The ALJ must explain in his decision how he considered the supportability and consistency factors in his evaluation. *Id.*

"An ALJ is not required to adopt a specific medical opinion in crafting an RFC." *Shirley*

*A. J. v. O'Malley*, No. 3:23-CV-00113-MGG, 2024 WL 1341077, at *6 (N.D. Ind. Mar. 29, 2024) (citation omitted). An RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). An RFC assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(3).

2. Prior Administrative Findings

In November 2018, Dr. Vazquez examined Woodworth in connection with his disability application and indicated his functional capacity was walking one block; standing 20 minutes; climbing two flights of stairs; and lifting 20 pounds with his right arm, 30 pounds with his left, and 70 pounds with both arms. (AR 706-07). His cardiac status was Class II under the New York Heart Association rating system, defined as "[s]light limitation of activity (fatigue/palpitation/dyspnea/angina) [but] [n]o symptoms at rest." (AR 710-11). Upon physical examination, Woodworth's gait and station were normal in speed, sustainability, and stability, though he had a slight limp due to his left knee. (AR 711). He had normal extremity strength (other than his right shoulder) and was able to squat, walk on toes, tandem walk, get on and off the table, and ambulate normally. (AR 711-13). His range of motion was normal except for some limitation in right shoulder rotation and left knee flexion. (AR 714).

In January 2019, Dr. Corcoran, a state agency physician, reviewed Woodworth's record

and opined that Woodworth could lift 10 pounds frequently and 20 pounds occasionally; stand or walk two hours in an eight-hour workday; sit for six hours in an eight-hour workday; and occasionally balance, stoop, kneel, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. (AR 164-65). Dr. Corcoran found that Woodworth's maximum work capacity was "sedentary" and that he was disabled based on his age under the "GRID" rules as of the evaluation date. (AR 166-67). Dr. Corcoran further documented "Medical improvement Possible" and assigned a medical reexamination "Diary date" of December 1, 2021. (AR 167).

In March 2020, Dr. Sands, another state agency physician, reviewed Woodworth's record and reached the same conclusions as Dr. Corcoran, except that Dr. Sands assigned a "Diary date" of January 1, 2023. (AR 177-78, 180-81).

3. <u>Discussion</u>

Woodworth contends the ALJ ignored the Appeals Council's directive to give further consideration to the prior administrative medical findings of Dr. Corcoran, Dr. Sands, and Dr. Vazquez, all who limited him to sedentary work. (ECF 21 at 10-14). Woodworth argues he should also have been limited to sedentary work during the relevant period, April 24, 2019, through February 19, 2024, rather than the full range of light work assigned by the ALJ. (*Id.*).

*a. Dr. Corcoran and Dr. Sands*

The ALJ penned a lengthy paragraph on the opinions of Dr. Corcoran and Dr. Sands, stating in relevant part:

> As for the period after January 25, 2019, the state agency physicians did not appear to address this in their prior administrative medical findings. Dr. Corcoran completed his findings on that date and nothing in the record indicates he revisited this thereafter (1A). Dr. Sands… completed his review in March 2020, but indicated there were no new records since Dr. Corcoran saw the file, and that he was in essence reviewing the period between the alleged onset date of June 2, 2017, through the established onset date of January 25, 2019 (3A). Nothing in his report indicates he was addressing any part of the period from January 25, 2019,

> or later. In fact, because there were no new records in the file, it would have been rather challenging for him to take on that task. And he had not been asked to take it on, as the claimant was only asking for an earlier onset date based on his significant cardiac issues. The Appeals Council asks the undersigned to consider the supportability and consistency of new evidence received at the hearing level in light of the prior administrative medical findings by Dr. Corcoran and Dr. Sands, as it appears that the Appeals Council believes those reports address the period of January 26, 2019, and later. The undersigned asserts that they do not, considering the dates of the reports, the lack of records after that date available to either physician, and the clear comments of Dr. Sands that he was looking at the record only to determine if any earlier established onset date was warranted. Even if that were not the case, the conclusions of Dr. Corcoran and Dr. Sands are not persuasive for the period starting April 24, 2019. Supportability cannot be addressed because they did not cite any records for that date or thereafter, and the record is more consistent with the ability to perform light exertion work as of that date up to the present ….

(AR 1067).

Woodworth argues that the "Diary date" set by Dr. Corcoran and Dr. Sands "assessed a three-year stretch of disability minimum" in January 2019 and March 2020, respectively (ECF 21 at 12), and thus, that the ALJ was patently wrong when stating "[n]othing in [Dr. Corcoran's] report indicates he was addressing any part of the period from January 25, 2019, or later" (AR 1067). As Woodworth sees it, "[t]he ALJ's critique of both reviewing doctor opinions misses that their medical judgment is specifically asked by the statute and the disability process to be prospective into the future." (ECF 21 at 12); *see* 20 C.F.R. § 404.1590(f) ("[The Commissioner] will not conduct a continuing disability review earlier than 3 years after that decision unless [the] case should be scheduled for a medical improvement expected or vocational reexamination diary review …."); *Jeremy L.J. v. Saul*, No. 4:19-cv-00031-RLY-DML, 2020 WL 1033795, at *2 n.3 (S.D. Ind. Feb. 14, 2020) (R. & R.) ("The Agency generally conducts a 'continuing disability review' every three years." (citation omitted)).

In assigning an RFC for the full range of light work, the ALJ relied on evidence dated after January 2019 that neither Dr. Corcoran nor Dr. Sands reviewed. Specifically, the ALJ

discussed Woodworth's visit to his cardiologist on April 24, 2019, where he denied any weight changes, fatigue, chest pain, shortness of breath, orthopnea, cough, pain, edema, or sleep issues, and reported he was active without complaints of angina, dyspnea, palpitations, lightheadedness, or syncope. (AR 1067; *see* AR 1052-54). The cardiologist told Woodworth he was doing well from a cardiac standpoint. (AR 1054). An echocardiogram two weeks later showed his ejection fraction had improved to 63 percent. (AR 1050; *see* AR 1044 (noting that Woodworth's ejection fraction of 20 percent in 2017 had increased to 63 percent by May 2019)).[2] The ALJ explained that these findings "justif[ied] increasing the claimant's exertional ability from sedentary to light and removing the restriction for part-time work due to fatigue as the claimant was no longer reporting symptoms and his cardiology testing and clinical findings were grossly normal." (AR 1067).

Woodworth contends that in assigning him an RFC for the full range of light work the ALJ substituted his own lay judgment for that of the medical experts and failed to build an accurate and logical bridge between the evidence of record and his conclusion. (ECF 21 at 13-14). Woodworth argues that, at a minimum, the ALJ should have requested another medical expert review to consider any new evidence rather than substitute his own lay judgment for that of the medical experts. (*Id.*). The Court agrees.

In assigning an RFC for light work, the ALJ heavily relied on the improvement of Woodworth's left ventricular ejection fraction to 63 percent in April 2019. (AR 1067). However,

---

[2] "Ejection fraction (EF) is a measurement, expressed as a percentage, of how much blood the left ventricle pumps out with each contraction. An ejection fraction of 60 percent means that 60 percent of the total amount of blood in the left ventricle is pushed out with each heartbeat …." *Wesley v. Kijakazi*, No. 2:20-cv-02073-MHH, 2022 WL 3588323, at *11 n.7 (N.D. Ala. Aug. 22, 2022) (citation omitted ). "A normal heart's ejection fraction may be between 50 and 70 percent." *Id.* (citation omitted); *see also Lorenzo v. Astrue*, No. 12-cv-2475, 2013 WL 3337794, at *1 (N.D. Ill. July 2, 2013) ("The normal, healthy, range for left ventricle ejection fraction is approximately between fifty-five to sixty-five percent." (citation omitted)).

Dr. Corcoran and Dr. Sands both reviewed a November 2018 echogram that showed Woodworth's ejection fraction had improved to 60 percent. (AR 163, 175). Yet, they still limited Woodworth to sedentary work with occasional postural maneuvers and no climbing of ladders, ropes, or scaffolds. (AR 162, 164-67, 175, 177-78, 180). Given the ALJ rejected all the medical source opinions of record, the ALJ relied on his own lay opinion in assessing an RFC for a full range of light work, which is impermissible. *See McGirr v. Comm'r of Soc. Sec.*, No. 19-CV-1004-FPG, 2020 WL 3467416, at *2 (W.D.N.Y. June 25, 2020) ("If the ALJ does not explicitly articulate, or a reviewing court cannot otherwise discern, how the ALJ arrived at particular restrictions, it raises the specter that the ALJ … interpreted the medical evidence based on her own lay judgment …." (citations omitted)); *Theresa M. v. Saul*, No. 19 C 31356, 2020 WL 7641286, at *5 (N.D. Ill. Dec. 23, 2020) ("[I]t is for doctors, and not ALJs to interpret x-rays, MRIs, and other raw medical data, even if those scans appear to be mild or unremarkable." (citing *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014))).

It is true there is no real dispute that the medical records after January 2019 show improvement in Woodworth's cardiac status. But "[t]he key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014); *see also Elkins v. Comm'r of Soc. Sec.*, No. 1:23-cv-00141-SLC, 2024 WL 3648448, at *7 (N.D. Ind. Aug. 5, 2024). At no point did a medical source opine that Woodworth improved enough to perform the full range of light work, which requires "a good deal of walking or standing—the primary difference between sedentary and most light jobs." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Nor has a medical expert weighed in on how Woodworth's obesity bears on his ability to perform the full range of light work. *See, e.g.*, *Martinez v. Astrue*, 630 F.3d 693, 698

(7th Cir. 2011) ("It is one thing to have [trouble standing and sitting because of a bad heart], it is another thing to have a bad [heart] supporting a body mass index in excess of 40."); *Murphy v. Colvin*, No. 10 C 607, 2013 WL 2589711, at *12-13 (N.D. Ill. June 11, 2013) (directing the ALJ to assess the cumulative effect of the claimant's obesity and cardiac impairments bears on his ability to sit or stand for at least six hours).

And to the extent the ALJ relied on Woodworth's rating of NYHA Class I by his cardiologist during the relevant period, the cardiologist also wrote in May 2022 that Woodworth was obese and "continues to have functional class 2 exertional dyspnea" with an ejection fraction of 60 percent. (AR 1019).[3] The ALJ seemingly disregards this Class II rating, reasoning there was "nothing on the examination [that] explains a reduction in [Woodworth's] functional class." (AR 1069). But the record reflects that Woodworth continued to struggle with obesity throughout the relevant period, as a September 2021 note indicated he had gained forty pounds and was experiencing exertional dyspnea. (*See, e.g.*, AR 1019, 1044). "[I]f the ALJ believed a particular [RFC] assessment would account for the NYHA limitations, the ALJ should have called on an expert to provide competent evidence on such issues." *Gallien v. Astrue*, No. CV 12-1246-E, 2012 WL 4512505, at *4 (C.D. Cal. Oct. 1, 2012) (collecting cases); *see Brawders v. Astrue*, 793 F. Supp. 2d 485, 494 (D. Mass. June 24, 2011) ("As a layperson, the ALJ was not qualified to translate the general Class II criteria into an actual physical functional residual capacity."). "Without [a] medical source statement as to the claimant's ability to function, substantial evidence for the ALJ's … finding that the claimant can do light work is lacking." *Brawders*, 793 F. Supp. 2d at 494.

As a result, this case must be remanded again for further proceedings. This outcome does

[3] As the ALJ noted, a NYHA Class II rating means individuals are comfortable at rest, but ordinary physical activity causes fatigue, palpitations, shortness of breath, or angina. (AR 1141).

not necessarily mean that Woodworth will be found disabled during the relevant period on remand. But given Woodworth's medical improvement during the relevant period, the ALJ on remand should, at a minimum, obtain an updated medical expert review of the relevant records and rely on more than his own lay interpretation of Woodworth's medical evidence in assigning an RFC for the full range of light work.[4] *See Michael B. v. Bisignano*, No. 4:24-cv-00043-KMB-TWP, 2025 WL 1770747, at *2-3 (S.D. Ind. June 26, 2025) (finding the ALJ created an "evidentiary deficit" by rejecting all the medical opinions of record and impermissibly filling the evidentiary gaps with his own lay opinion of medical evidence (collecting cases)).

---

[4] Because a remand is warranted based on Woodworth's argument challenging the ALJ's rejection of all of the medical source opinions of record, the Court need not reach his remaining arguments. Having said that, the Court did review several of Woodworth's other arguments and offers its impressions to the extent they may be helpful to the parties and on remand.

Woodworth alleges two flaws by the ALJ when assessing his mental impairments. He first faults the ALJ for failing to "account for [his daily activities] as to [his] mental health impairments." (ECF 21 at 22). But Woodworth does not point to any evidence of record demonstrating how his mental impairments restrict his daily activities. "[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citation omitted). Woodworth also faults the ALJ for relying on his limited mental health treatment and failing to probe further about possible explanations for his lack of treatment. (ECF 21 at 22). But the ALJ did ask Woodworth why he had not received any treatment since June 2023, to which Woodworth responded: "I was stubborn, I guess." (*Id.* (citing AR 1111, 1118)). The ALJ was free to determine that this was an insufficient reason for failing to pursue treatment. *See, e.g., Marshall v. Colvin*, No. 4:12-CV-075 JD, 2014 WL 1230219, at *19 (N.D. Ind. Mar. 25, 2014). While Woodworth speculates in his brief that "stubbornness sure seems … a code for depression" (AR 21 at 22), Woodworth fails to cite any evidence to support this speculation. On the record presented, the ALJ's consideration of Woodworth's mental health impairment appears supported by substantial evidence.

Woodworth also argues the transcript of the February 11, 2025, administrative hearing contains so many "inaudible" notations and errors that due process has been violated. (ECF 21 at 24-25). Specifically, Woodworth counts 27 inaudible notations and notes one typographical error in the 26-page hearing transcript. (*See* AR 1098-123). But that number of inaudible notations in a 26-page transcript does not, in and of itself, deem the transcript so deficient as to preclude a fair evaluation upon judicial review. *See, e.g.*, *Ward v. Heckler*, 786 F.2d 844, 848 (8th Cir. 1986) (finding that one to two small gaps of inaudible testimony per page did not interfere with comprehension of the testimony to an extent that would hinder fair review); *Victor v. Saul*, No. 2:17-CV-302-HAB, 2019 WL 2912592, at *2 (N.D. Ind. July 8, 2019) (finding that occasional and brief inaudible excerpts did not materially affect the court's ability to discern the scope of the proceedings). And Woodworth identifies just one typographical error in the transcript, yet acknowledges it is an "obvious typo" and that the "ALJ did not indicate relying on such." (ECF 21 at 24). "[J]udicial review does not include purist nit picking. In order to be relevant, record deficiencies must be of substance and not of minor detail." *Koning v. Bowen*, 675 F. Supp. 452, 457 (N.D. Ind. 1987) (citation omitted); *see Ortiz-Salas v. I.N.S.*, 992 F.2d 105, 106 (7th Cir. 1993) ("A litigant who seeks reversal on the ground of a denial of due process that is due to an inaccurate or incomplete transcript is … required to make the best feasible showing he can that a complete and accurate transcript would have changed the outcome of the case."). Woodworth does not show that the inaudible excerpts or the typographical error materially affected the outcome of the case.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision denying disability for the period of April 24, 2019, through February 19, 2024, is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Woodworth and against the Commissioner.

SO ORDERED.

Entered this 16th day of November 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge